**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION**

BARBARA ANN HARRINGTON,

        Plaintiff,

        v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

CIVIL ACTION NO.: 5:24-cv-93

**REPORT AND RECOMMENDATION**

Plaintiff contests the decision of Administrative Law Judge Jeffrey A. Ferguson ("the ALJ" or "ALJ Ferguson") denying her claim for Period of Disability and Disability Insurance Benefits.  Plaintiff urges the Court to reverse the ALJ's decision.  Doc. 14.  Defendant asserts the Commissioner's decision should be affirmed.  Doc. 20.  For the reasons that follow, I **RECOMMEND** the Court **AFFIRM** the ALJ's decision.  I **RECOMMEND** the Court **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal.

**BACKGROUND**

Plaintiff filed an application for a Period of Disability and Disability Insurance Benefits on March 21, 2023, alleging an onset date of March 17, 2023.  R. 197.[1]  On June 25, 2024, ALJ Ferguson held a hearing via telephone, at which Plaintiff, who was represented by counsel, appeared and testified.  Id.  Joann Hayward, a vocational expert ("VE"), also appeared

---

[1]    A transcript of the entire proceedings before the Social Security Administration appears at Document Number 13.  The transcript includes paginated Record cites.  Docs. 13-1 to 13-7.  I refer to the transcript using these same Record cites.

telephonically at the hearing.  ALJ Ferguson denied Plaintiff's claims after the hearing in a decision on August 14, 2024.  R. 10–28.  The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.  R. 1.

Plaintiff, born on February 10, 1972, was 51 years old at the time of the alleged onset date and 52 years old at the time of the ALJ's decision in 2023.  R. 65.  Plaintiff has at least a high school education.  R. 44.  Plaintiff previously worked as an advertising clerk.  R. 23.

## DISCUSSION

### I.    The ALJ's Findings

Title II of the Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The Act qualifies the definition of disability as follows:

> An individual shall be determined to be under a disability only if [her] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]

42 U.S.C. § 423(d)(2)(A).  Under the Act, the Commissioner has established a five-step process to determine whether a person meets the definition of disability.  20 C.F.R. §§ 404.1520, 416.920; Bowen v. Yuckert, 482 U.S. 137, 140 (1987).

The first step determines if the claimant is engaged in "substantial gainful activity."  Id. If the claimant is engaged in substantial gainful activity, then benefits are immediately denied. Id.  If the claimant is not engaged in such activity, then the second inquiry is whether the claimant has a medically severe impairment or combination of impairments.  Id. at 140–41.  If

the claimant's impairment or combination of impairments is severe, then the evaluation proceeds to step three.  The third step requires a determination of whether the claimant's impairment meets or equals one of the impairments listed in the Code of Federal Regulations and acknowledged by the Commissioner as sufficiently severe to preclude substantial gainful activity.  20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. Pt. 404, Subpt. P. App. 1; Phillips v. Barnhart, 357 F.3d 1232, 1238 (11th Cir. 2004).  If the impairment meets or equals one of the listed impairments, the plaintiff is presumed disabled.  Yuckert, 482 U.S. at 141.

If the impairment does not meet or equal one of the listed impairments, the sequential evaluation proceeds to the fourth step to determine if the impairment precludes the claimant from performing past relevant work, i.e., whether the claimant has the residual functional capacity to perform her past relevant work.  Id.; Stone v. Comm'r of Soc. Sec., 503 F. App'x 692, 693 (11th Cir. 2013).  A claimant's residual functional capacity "is an assessment . . . of the claimant's remaining ability to do work despite his impairments."  Id. at 693–94 (ellipsis in original) (quoting Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997)).  If the claimant is unable to perform her past relevant work, the final step of the evaluation process determines whether she can adjust other work in the national economy, considering her age, education, and work experience.  Phillips, 357 F.3d at 1239.  Disability benefits will be awarded only if the claimant is unable to perform other work.  Yuckert, 482 U.S. at 142.

Here, the ALJ followed this sequential process to determine Plaintiff did not engage in substantial gainful activity since her alleged onset date, March 17, 2023.  R. 12.  At step two, ALJ Ferguson determined Plaintiff had the following severe impairments: osteoarthritis; T-12 compression fracture; degenerative disc disease of the lumbar spine; obesity; and diabetes

mellitus.  R. 13–15.  At the third step, the ALJ determined Plaintiff's impairment or combination of impairments did not meet the severity of a listed impairment.  R. 15.

The ALJ found Plaintiff has the residual functional capacity ("RFC") to perform light work, except Plaintiff can stand and walk a combined total of four hours over the course of an eight-hour workday.  Plaintiff can sit a total of six hours over the course of an eight-hour workday, can occasionally climb ramps and stairs, can never climb ladders, ropes, or scaffolds, and can occasionally balance, stoop, kneel, crouch, and crawl.  Plaintiff can frequently handle and finger with her bilateral upper extremities and must avoid concentrated exposure to extreme cold, wetness, humidity, vibration, pulmonary irritants such as fumes, odors, dusts, gases, and poor ventilation, and workplace hazards such as moving machinery, moving mechanical parts, and unprotected heights.  R. 15–23.

At the next step, the ALJ determined Plaintiff is able to perform her past relevant work as an advertising clerk, which does not require the performance of work-related activities precluded by her RFC.  R. 23.  The ALJ concluded that Plaintiff has not been under a disability since her alleged onset date of March 17, 2023.  Id.

## II.    Issues Presented

Plaintiff asserts the ALJ erred by not adopting mental limitations that he found credible in the RFC determination.  Doc. 14 at 4.  Relatedly, Plaintiff argues that the ALJ failed to explain why he omitted those same mental limitations from the RFC determination.  Id.  Specifically, Plaintiff argues that the ALJ found that Plaintiff had functional limitations in mental functioning but made no mention of those limitations in the RFC analysis at steps two and three.  Id. at 8.

### III.    Standard of Review

It is well established judicial review of social security cases is limited to questions of whether the Commissioner's factual findings are supported by "substantial evidence" and whether the Commissioner has applied appropriate legal standards.  Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990).  A reviewing court does not "decide facts anew, reweigh the evidence or substitute" its judgment for that of the Commissioner.  Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005).  Even if the evidence preponderates against the Commissioner's factual findings, the court must affirm a decision supported by substantial evidence.  Id.

However, substantial evidence must do more than create a suspicion of the existence of the fact to be proved.  The evidence relied upon must be relevant evidence which a reasonable mind would find adequate to support a conclusion.  Ingram v. Comm'r of Soc. Sec. Admin., 496 F. 3d 1253, 1260 (11th Cir. 2007).  The substantial evidence standard requires more than a scintilla but less than a preponderance of evidence.  Dyer, 395 F.3d at 1210.  In its review, the court must also determine whether the ALJ or Commissioner applied appropriate legal standards.  Failure to delineate and apply the appropriate standards mandates the findings be vacated and remanded for clarification.  Cornelius, 936 F.2d at 1146.

The deference accorded the Commissioner's findings of fact does not extend to his conclusions of law, which enjoy no presumption of validity.  Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard).  If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the court must reverse the decision.  Wiggins v. Schweiker,

679 F.2d 1387, 1389 (11th Cir. 1982), overruled by statute on other grounds recognized by Lane v. Astrue, No. 8:11-CV-345-T-27, 2012 WL 292637, at *4 (M.D. Fla. Jan. 12, 2012).

IV.    **Plaintiff Has Not Shown that the ALJ Failed to Properly Evaluate Plaintiff's Impairments at Each Step of the Analysis**

Plaintiff argues that ALJ Ferguson found she had mild mental limitations but failed to account for those limitations in the RFC determination.  Doc. 14.  Specifically, the ALJ concluded at step 2 that Plaintiff had non-severe mental impairments of depressive disorder and anxiety disorder and then concluded Plaintiff had only "mild" limitations in the four functional areas.  Plaintiff argues that the ALJ was required to explain the step 2 mental limitation findings in the RFC or give a reason for not doing so.  Id. at 6.  Plaintiff explains that the ALJ found she could perform past relevant semi-skilled work and her mental limitations are relevant to determining whether she can perform that work.  Id. at 9–10.

The Commissioner argues that substantial evidence supports the ALJ's RFC assessment.  Doc. 20 at 4.  The Commissioner explains that the ALJ's RFC explanation was detailed and accounted for a range of Plaintiff's medical factors.  Id. at 5–8.  The Commissioner argues that the ALJ did consider Plaintiff's mental limitations in the RFC assessment by referencing Plaintiff's mental limitations in steps 4 and 5 of the sequential process.  Id.

At step two of the sequential process, the ALJ must determine whether a claimant had a medically severe impairment.  Bowen, 482 U.S. at 140–41.  In evaluating a claimant's mental impairments, the ALJ must use a "special technique."  20 C.F.R. § 404.1520a(a).  This technique has been referred to as the "psychiatric review technique or 'PRT'"  Moore v. Barnhart, 405 F.3d 1208, 1213 (11th Cir. 2005).  Per the Regulation, the ALJ must determine whether the claimant has a medically determinable impairment.  20 C.F.R. § 404.1520a(b)(1).  If so, the ALJ must rate the degree of functional limitation in four broad functional areas: understanding, remembering,

or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself.  20 C.F.R. § 404.1520a(c)(3).  At step four, when assessing the claimant's residual functional capacity, the ALJ must address those impairments because the ALJ must consider the combined effect of all medically determinable impairments regardless of severity.  20 C.F.R. § 404.1545(a)(2).

In making his RFC assessment, the ALJ discussed Plaintiff's mental health records. Plaintiff argues that the ALJ erred by not explaining his PRT findings in the RFC analysis. Specifically, Plaintiff contends that "PRT findings, even mild ones, must find adequate expression via specific functional limitations in the RFC determination or the ALJ must adequately explain their basis for not doing so."  Doc. 14 at 6.  This statement overstates the standard.  The psychiatric review technique is plainly "not an RFC assessment" but is "used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process." SSR 96-8P, 1996 WL 374184 (July 2, 1996).  The technique "is separate from the ALJ's evaluation of the claimant's RFC assessment" and the RFC assessment is "a more detailed assessment of the claimant's functionality."  Jacobs v. Comm'r of Soc. Sec., 520 F. App'x 947, 950 (11th Cir. 2013).

Here, the ALJ properly applied the psychiatric review technique at step two.  The ALJ assessed Plaintiff's degree of functional limitation in all four broad functional areas.  The ALJ explained that Plaintiff had "no more than mild limitation" in each area.  R. 13–14.  Because of this, the ALJ categorized Plaintiff's mental limitations as "nonsevere."  R. 14.  The ALJ acknowledged at this point that the RFC assessment used at steps four and five "requires a more detailed assessment."  Id.

When evaluating Plaintiff's RFC, the ALJ provided a detailed, itemized analysis of all of Plaintiff's impairments, including mental impairments.  The ALJ explained that Plaintiff underwent a mental health evaluation by Doctor John Kajic on August 16, 2023.  Dr. Kajic found "no disabling mental limitations."  R. 19.  The ALJ stated that Dr. Kajic's opinion was persuasive "and consistent with the State agency opinions finding the claimant's depressive disorder and anxiety disorder are nonsevere and they cause no more than mild limitations."  Id.; see R. 22, 23 (describing State agency opinions finding Plaintiff's mental limitations to be non-severe).  The ALJ also found Dr. Kajic's opinion of mild limitation to be consistent with Plaintiff's treatment records from office visits at Penn State Health Milton S. Hershey Medical Center on May 3, 2023 and June 27, 2023.  R. 20.  Dr. Kajic's opinion was also consistent with Plaintiff's treatment at Ascension St. Vincent on February 12, 2024 and March 11, 2024.  At that visit, Plaintiff was found to have "good judgment" but "mild anxiety and depression.  R. 19.  The ALJ found that this "shows the claimant's mental impairments are nonsevere."  R. 20.  The ALJ concluded that the medical evidence supports the restrictions listed in his assessment.  R. 23.  Thus, Plaintiff's statement that "[d]espite the ALJ's own findings, it is beyond dispute that the ALJ adopted absolutely ZERO mental limitations in his RFC finding" is misleading.  Doc. 14 (emphasis in original).  The ALJ clearly assessed Plaintiff's mental impairments at step two and in the RFC assessment.  And in the RFC assessment, the ALJ found that Plaintiff's mental impairments were mild and assessed an RFC of light work.  R. 15.  The ALJ was not required to re-analyze, verbatim, each of the four broad areas of the psychiatric review technique.  Rather, the ALJ was required to provide a detailed and itemized assessment of Plaintiff's functionality, taking into account all impairments, both severe and not.  He did so.

The authority that Plaintiff cites does not support a different conclusion. Plaintiff cites almost no binding authority from this Circuit to support her argument. One Eleventh Circuit case Plaintiff cites, Winschel v. Commissioner of Social Security, supports the idea that an ALJ *can* consider PRT conclusions in the RFC evaluation, but that case places no obligation on the ALJ to do so. 631 F.3d 1176, 1180 (11th Cir. 2011) ("Though the PRT and RFC evaluations are undeniably distinct, nothing precludes the ALJ from considering the results of the former in his determination of the latter.") (citations omitted). The primary out-of-circuit case Plaintiff cites, Wells v. Colvin, is distinguishable. 727 F.3d 1061 (10th Cir. 2013). Plaintiff argues that Wells stands for the proposition that an ALJ "must" explain PRT findings in the RFC assessment. Doc. 14 at 6. But in that case, the Tenth Circuit Court of Appeals remanded not because of a technical disconnect between steps two and four, but because substantial evidence did not support the ALJ's RFC assessment. The Tenth Circuit found numerous problems with the ALJ's findings, including that: the ALJ may have overrelied on his step two findings to make RFC conclusions; he overrelied on the claimant's own statements; and the ALJ made out-and-out mistakes in reading the evidence. Wells, 727 F.3d at 1068–71. Further, even if Plaintiff's citations were applicable, the ALJ did account for Plaintiff's mental impairments in assessing the RFC, as explained. Therefore, Plaintiff's arguments are ultimately not convincing.

### CONCLUSION

Based on the foregoing, I **RECOMMEND** the Court **AFFIRM** the ALJ's decision. I **RECOMMEND** the Court **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal.

Any objections to this Report and Recommendation shall be filed within 14 days of today's date. Objections shall be specific and in writing. Any objection that the Magistrate

Judge failed to address a contention raised in the Complaint must be included. Failure to file timely, written objections will bar any later challenge or review of the Magistrate Judge's factual findings and legal conclusions. 28 U.S.C. § 636(b)(1)(C); Harrigan v. Metro Dade Police Dep't Station #4, 977 F.3d 1185, 1192–93 (11th Cir. 2020). To be clear, a party waives all rights to challenge the Magistrate Judge's factual findings and legal conclusions on appeal by failing to file timely, written objections. Harrigan, 977 F.3d at 1192–93; 11th Cir. R. 3-1. A copy of the objections must be served upon all other parties to the action.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

**SO REPORTED AND RECOMMENDED**, this 26th day of January, 2026.

BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA